IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

HILDA L. SOLIS, Secretary of )   Civ. No. 09-00512 ACK-BMK
Labor, United States Department )
of Labor, )
)
        Petitioner, )
)
   v. )
)
LABORER'S INTERNATIONAL UNION OF )
NORTH AMERICA, LOCAL 368, )
)
        Respondent. )
_____

**ORDER (1) ADOPTING THE MAGISTRATE'S FINDINGS AND RECOMMENDATION, (2) AFFIRMING THE MAGISTRATE'S ORDER DENYING RESPONDENT'S MOTION TO QUASH, AND (3) AFFIRMING THE MAGISTRATE'S ORDER GRANTING IN PART RESPONDENT'S ALTERNATIVE REQUEST FOR A PROTECTIVE ORDER**

This action is brought to compel Respondent Laborer's International Union of North America, Local 368 ("Local 368" or "Respondent") to comply with two administrative subpoenas duces tecum issued and directed to Respondent by Jennifer Bergschneider, Acting District Director of the Office of Labor-Management Standards ("OLMS"), on behalf of the Petitioner Hilda L. Solis, the Secretary of the United States Department of Labor ("Secretary" or "Petitioner"). See Petitioner's Response to Respondent's Objections filed March 15, 2010 ("Petitioner's Resp.") at 8.

## FACTUAL BACKGROUND[1/]

### A.    The 2008 Settlement Agreement & Election Rules

Local 368 was placed under trusteeship by its parent union, Laborers International Union of North American ("LIUNA") beginning in January 2007. Id. at 9; Memorandum in Support of Respondent's Objections filed on February 2, 2010 ("Respondent's Obj. Mem.") at 2.  In order to end the trusteeship, Local 368 scheduled an election of several officers for May of 2008. Petitioner's Resp. at 9; Respondent's Obj. Mem. at 2.

According to Petitioner, in April of 2008, OLMS received an election protest from a Local 368 member who complained that one of the candidates running for the union's highest office, Oliver H. Kupau ("Kupau"), should be barred as a candidate. Petitioner's Resp. at 9.  As a result of this complaint, OLMS opened an investigation. Id.; Respondent's Obj. Mem. at 2.

In June of 2008, OLMS notified Kupau that he was disqualified as a candidate for the position of business manager, and that he was barred from holding any union office. Petitioner's Resp. at 9.  Further, OLMS ordered LIUNA, as trustee for Local 368, to immediately terminate Kupau's employment with

---

[1/] The facts as recited in this Order are for the purpose of disposing of Respondent's objections and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

Local 368.  Id.

In August of 2008, OLMS reviewed the ballots and interim candidates were seated.  Id.  As a result of the Secretary's investigation, on August 20, 2008, LIUNA, Local 368, and OLMS, entered into a voluntary compliance agreement ("Settlement Agreement").  Id.; Respondent's Obj. Mem. at 2, Ex. 1:8-9.  Subsequently, LIUNA ended the trusteeship of Local 368.[2] Id.  The Settlement Agreement addresses the tallying of the ballots from the 2008 election and, if necessary, a rerun election related to the offices of President, Recording Secretary, and Business Manager.  Respondent's Obj. Mem. at 2-3.

With respect to the complaints regarding the May 2008 election, it was agreed that:

> [T]he time within which the Secretary of Labor may bring suit for any and all causes of action arising from or relating to the OLMS investigative findings with regard to the challenged election for the positions of President and Recording Secretary shall be extended to 45 days after the election and for the position of Business manager until 90 days after the district court rules in Kupau v. United States Dep't of Labor, CV 08-00296 HG LEK.  Such action shall not constitute a practice or precedent in the event of any future dispute of a similar nature.  It is further agreed that LIUNA Local 368 waives any and all defenses relating to the timeliness of any and all actions required to be taken by the Secretary under Section 402 of the LMRDA which Local 368 might otherwise have to the causes of action referred to above.

---

[2] According to Respondent, "the trusteeship was removed on or about September 30, 2008."  Respondent's Obj. Mem. at 2.

> LIUNA Local 368 further agrees that any dispute
> arising during the course of the supervised
> election as to the legality or the practicability
> of any election procedure shall be decided by the
> representative of the Secretary of Labor.  Any
> member's protest regarding the supervised election
> shall be filed with the OLMS election supervisor.

Respondent's Obj. Mem. at 3, Ex. 1:9.  The supervised election

was delayed on account of Kupau's appeal to this Court of the

OLMS's decision to bar him from holding office.  Petitioner's

Resp. at 9-10.  On April 2, 2009, this Court denied Kupau's

Application for an Exemption from 29 U.S.C. § 504, which

prohibits any individual convicted of specified crimes, including

bribery, from serving as an officer, director, executive board

member, or employee of a labor organization for a period of

thirteen years from the later of the date of conviction or the

end of a period of incarceration.  Id. at 10; 29 U.S.C. § 504(a).

As a result of this decision, it was determined that a

rerun election was necessary for the offices of President,

Recording Secretary, and Business Manager-Delegate, which was to

be supervised by Petitioner and conducted in accordance with the

rules and procedures dated April 8, 2009 ("Election Rules"),

agreed on by parties as part of the Settlement Agreement.

Respondent's Obj. Mem. at 3, Ex. 1:10-19; Petitioner's Resp. at

9.  The supervised election was scheduled to occur on July 11,

2009.  The Election Rules provide that installation of the

officers would occur at the next regular membership meeting

4

following the tally and OLMS election protest deadline. Election Rules at 2. Each candidate was to have the opportunity to inspect the membership list which was to contain the names and last known addresses of all Local 368 members subject to the collective bargaining agreement. Id. The ballots were to be tallied on July, 11, 2009. Id. at 4. With respect to election protests, the Election Rules provide that:

> Any member may protest the supervised election of officers directly to the OLMS election supervisor at any time during the election process. Protests must be in writing and must be received no later than 5:00 p.m. on Tuesday, July 21, 2009.

Id. at 6.

At all times relevant to the instant Petition, OLMS, through its field office in Honolulu, Hawaii, has been involved in investigating complaints related to the supervised election, as mandated by the Election Rules. Petitioner's Resp. at 10. Specifically, the Election Rules state that

> it should be clearly understood that all phases of the nominations and elections of Local 368 officers are subject to U.S. Department of Labor supervision. No aspect should be conducted without prior consultation with and approval by the OLMS election supervisor or his designated representatives.

Election Rules at 9.

**B. The Secretary's Request for Documents**

According to Petitioner, one or more Local 368 members complained to OLMS that prior to June 12, 2009, only certain

5

candidates had access to and were making calls to voting members.[3/]  Petitioner's Resp. at 10.  On June 17, 2009, OLMS wrote to Respondent's Executive Board requesting that Respondent provide to Pearl Moenahele, OLMS election supervisor in Honolulu, a list of names and telephone numbers for all members of Local 368 ("6/17/09 Letter to the Executive Board").  Respondent's Obj. Mem. at 5, Ex. 1:26-27.  The 6/17/09 Letter to the Executive Board requested that the list of names and telephone numbers be delivered by June 19, 2009.

The parties do not indicate whether Local 368 responded to the 6/17/09 Letter to the Executive Board, but on June 22, 2009, OLMS issued a subpoena duces tecum to the custodian of records of Local 368, seeking records pertaining to membership information and telephone numbers ("First Subpoena").  Petitioner's Resp. at 10-11; Respondent's Obj. Mem. at 5, Ex. 1:28.  Petitioner asserts that the purpose of First Subpoena was twofold.  First, OLMS intended to make the membership information and telephone numbers available to all candidates as part of its supervisory function under the Settlement Agreement, such that the candidates would have equal access to this information.  Petitioner's Resp. at 10-11.  Second, the subpoena was to assist in its general investigation to determine whether any person

---

[3/] A copy of the allegations were not provided to Respondent.  Respondent's Obj. Mem. at 7.

associated with Local 368 violated or is violating any provision

of the Labor-Management Reporting and Disclosure Procedure Act of

1959, 29 U.S.C. § 401-531 ("LMRDA" or "Act").  Id.[4/]  On June 23,

2009, OLMS personally served Local 368 with the First Subpoena

which required Respondent to produce the requested records on

June 24, 2009.  Id. at 11.  On June 24, 2009, Respondent's

secretary-treasurer informed OLMS that Respondent objected to the

release of the personal telephone numbers, and therefore would

not produce the records requested in First Subpoena.  Id.;

Respondent's Obj. Mem. at 5-6.

Subsequently, according to Petitioner, OLMS received

additional election protests between June 12, 2009, and July 21,

2009, complaining that Local 368 resources were used to promote

several of the candidates for the rerun supervised election.

Petitioner's Resp. at 11.  As a result of these complaints, OLMS

issued another subpoena duces tecum on July 14, 2009 ("Second

Subpoena").  Petitioner's Resp. at 11; Respondent's Obj. Mem. at

6, Ex. 1:28-30.  The supervised election proceeded, and the votes

---

[4/] As part of this general investigation of LMRDA
compliance, OLMS investigators have sought to obtain various
documents and records that Respondent Local 368 is required to
maintain under LMRDA § 401, 29 U.S.C. § 401, and the Election
Rules, including records pertaining to membership and the use of
dues received by the labor organization to promote the candidacy
of any person in the election.  Petitioner's Resp. at 10.
According to Petitioner, when OLMS initiates an investigation of
an election, OLMS generally conducts an in-depth review and
analysis of relevant election records.  Id.

were tallied on July 11, 2009, pursuant to the Election Rules. Petitioner's Resp. at 11.

The Second Subpoena required Local 368 to produce records related to these complaints, including information pertaining to Local 368 campaign and business expenses, timekeeping records, union vehicle logs, travel expenses, cellular telephone subscriber information in Respondent's possession, and minutes of meetings from January 1, 2009, through July 14, 2009.  Petitioner's Resp. at 11.  OLMS served the subpoena on Respondent on July 15, 2009, which required the Respondent to produce the records by July 24, 2009.  Id.

On July 17, 2009, counsel for Local 368 requested and received an extension for compliance with the Second Subpoena, until July 31, 2009.  Id.  On July 21, 2009, counsel for Local 368 requested copies of all supervised election protests received by OLMS ("7/21/09 Letter to OLMS").  Id. at 11-12; Respondent's Obj. Mem. at 7, Ex. 2:5.  OLMS did not provide Respondent copies of any of the complaints.  Petitioner's Resp. at 12.  On July 27, 2009, counsel for Local 368 again requested copies of the supervised election protests ("7/27/09 Letter to OLMS").  Id.; Respondent's Obj. Mem. at 7, Ex. 2:6-7.  Local 368 asserted that:

> [a]bsent a copy of the written protests the Local union's due process rights which include notice and opportunity to be heard is being infringed.
>
> Moreover, without a description of the dates, times, places; affected individuals, events, and

occurrences which are material to the protests we
are unable to determine which documents are
material or relevant to the investigation.

7/27/09 Letter at 1.

OLMS responded to counsel for Local 368 in a letter
dated July 29, 2009, that described _inter alia_, the investigative
authority of OLMS over the supervised election, as well as its
authority to ensure that no violations of the LMRDA occurred
during the election ("7/29/09 Letter to Local 368").
Respondent's Obj. Mem. at 8, Ex. 2:8-9.  OLMS also explained its
subpoena authority, including the right to take possession of the
originals, not merely inspect, the records sought under subpoena.
_Id._  Finally, OLMS explained that under its investigative
authority, OLMS had already determined the materiality and
relevance of the subpoenaed records, and therefore would not
provide copies of election protests to Respondent.   _Id._

On July 30, 2009, counsel for Local 368 responded to
OLMS.  Petitioner's Resp. at 12; Respondent's Obj. Mem. at 7-8,
Ex. 2:10-11.  Counsel for Local 368 stated, _inter alia_, that OLMS
could inspect the records requested in the Second Subpoena, but
that copies of the records would be produced to OLMS only after
an explanation by OLMS of the relevance and materiality of the
documents.  Petitioner's Resp. at 12.  OLMS appeared at the
office of the custodian of the records, which is currently
counsel for Local 368, on July 31, 2009, and asked for the

original of each and every item subpoenaed in both the subpoenas duces tecum.  Id.  Local 368 refused to produce the subpoenaed documents.  Id. at 12-13.

On September 25, 2009, counsel for Petitioner sent a letter to Respondent's counsel requesting production of the requested records.[5/]  Id. at 13.  According to Petitioner, on October 3, 2009, counsel for Local 368 responded indicating that it would not produce the subpoenaed documents.  Id.  To date, OLMS has not received from Local 368 the documents requested in either of the subpoenas duces tecum.  Id.  Consequently, OLMS has not yet certified the July 2009 rerun election.  Id.

## PROCEDURAL BACKGROUND

On October 22, 2009, the Secretary filed a Petition to Enforce two Administrative Subpoenas Duces Tecum ("Petition"). The Petition was accompanied by a Memorandum of Points and Authorities in Support of the Petition ("Mem. in Support of Petition"), as well the declaration of Pearl Moenahele, Senior Investigator for the Honolulu OLMS office ("Moenahele Decl."). Ms. Moenahele's declaration was accompanied by various exhibits.

On November 25, 2009, Respondent filed an answer to the Petition ("Answer").  On the same day, Respondent filed a Motion to Quash the Administrative Subpoenas Duces Tecum, or in the

---

[5/] According to Respondent, the records are now in the possession of Respondent's counsel.  Respondent's Obj. Mem. at 7-8.

Alternative, for a Protective Order ("Motion to Quash" and "Motion for a Protective Order").

Oral arguments on the Petition and Respondent's motions were held on January 20, 2010, before Magistrate Judge Barry M. Kurren.  At the hearing, Judge Kurren found and recommended that the Court grant the Secretary's Petition.  Further, Judge Kurren orally denied Respondent's Motion to Quash, and granted in part Respondent's Motion for a Protective Order.

Following up on his oral order, on February 2, 2010, Judge Kurren issued a Findings and Recommendation to grant the Petition ("2/2/10 F&R").  On February 9, 2010, Judge Kurren entered orders on the Motion to Quash and the Motion for a Protective Order ("2/9/10 Order on Respondent's Motion to Quash" and "2/9/10 Order on Respondent's Motion for a Protective Order").

On February 12, 2010, Respondent filed an objection to Judge Kurren's 2/2/10 F&R ("Respondent's Obj.").  Respondent's Objection was accompanied by a memorandum in support of the objections.  Respondent objected to Judge Kurren's 2/2/10 F&R as well as "the underlying orders on the Union's motion to quash or alternatively for a protective order, filed February 9, 2010." To be sure, on February 18, 2010, Respondent filed two separate objections, one with respect to the 2/9/10 Order on Respondent's Motion to Quash, and one with respect to the 2/9/10 Order on

11

Respondent's Motion for a Protective Order.  These objections did not raise any additional arguments, but merely attached Respondent's Objection Memorandum filed on February 2, 2010, as an exhibit to each additional objection.

The Secretary requested an extension of time to file a response to Respondent's objections until March 15, 2010, which was granted by the Court on February 19, 2010.  See Docket nos. 35, 38, 40.

On March 15, 2010, Petitioner filed a brief in opposition to Respondent's objections ("Petitioner's Resp.").[6]

## A.   Judge Kurren's Findings & Recommendation

In the 2/2/10 F&R, Judge Kurren found that the Secretary has conducted, and is conducting, a legitimate investigation into the July 2009 rerun election.  See 2/2/10 F&R at 2.  As such, Judge Kurren found that the Local 368 members' telephone numbers sought in the First Subpoena are relevant and material to investigations of alleged violations under the LMRDA prior to and during the July 2009 rerun election.  Id. at 3.  In addition, Judge Kurren concluded as a matter of law that the documents requested in the Second Subpoena are relevant and material to the investigation of the July 2009 rerun supervised election.  Id. at 7.  These documents include information

---

[6] The Court finds that a hearing in this matter is neither necessary nor appropriate.  See Local Rule 7.2(d).

pertaining to Local 368 campaign and business expenses, timekeeping records, union vehicle logs, travel expenses, cellular telephone subscriber information in Respondent's possession, and minutes of meetings from January 1, 2009, through July 14, 2009. Id. at 3-4.

In order to protect the privacy interests of Local 368's members, Judge Kurren ordered that the Secretary carry out its investigation in a sequential manner. Id. at 7. Specifically, Judge Kurren stated that "[i]f the Secretary determines after reviewing the documents produced under the [Second] subpoena, that the telephone numbers are necessary to cross reference with other telephone records, the Secretary may demand, without leave of Court, the telephone numbers requested in the [First] subpoena." Id. Judge Kurren observed that Petitioner does not intended to publish the telephone numbers or contact Local 368 members whose telephone numbers may be provided. Id. at 5. However, Judge Kurren found that Petitioner may later contact Local 368 members if necessary to complete the Secretary's investigation. Id.

Finally, with regard to Respondent's allegation that the Secretary would presently be time-barred from bringing a complaint to challenge the results of the July 2009 rerun election, Judge Kurren held that the rerun election was analogous to a Court ordered rerun election under Section 402(c)(2) of the

13

LMRDA, 29 U.S.C. § 482.  Id. at 6.  As such, the 60 day time limit to bring a complaint for violations under the LMRDA pursuant to Section 402(b), 29 U.S.C. § 482(b), is not applicable in this matter.  Id.

### B.   Judge Kurren's Orders

In the 2/9/10 Order on Respondent's Motion for a Protective Order, Judge Kurren granted, in part, Respondent's Motion for a Protective Order.[7]  Specifically, Respondent's Motion for a Protective Order was granted to the extent that the Secretary is required to first review the documents obtained by the Second Subpoena, and then make a determination as to whether the documents requested in the First Subpoena are necessary to cross reference with these documents.  2/9/10 Order on Respondent's Motion for a Protective Order at 2.

As for the 2/9/10 Order on Respondent's Motion to Quash, because Judge Kurren recommended that the Petition be enforced, he denied Respondent's Motion to Quash outright.  See 2/9/10 Order on Respondent's Motion to Quash at 2.

---

[7] In the 2/2/10 F&R, Judge Kurren recommends that the Court deny Respondent's motion for a protective order without prejudice.  2/2/10 F&R at 8.  As Judge Kurren subsequently issued an order granting Respondent's Motion for a Protective Order in part, the Court views this as a recommendation that Respondent be permitted to file an additional motion for a protective order if, after the Secretary determines that the documents requested in the First Subpoena are warranted, Respondent still believes a protective order is necessary.  A review of the hearing before Judge Kurren confirms this intention.  See Tr. 10:15-22.

C.   **Respondent's Objections**

Pursuant to Local Rule 74.2, when objecting to a magistrate judge's findings and recommendation, the party must specifically identify the portions of the order, findings, or recommendations to which objections are made and the basis for such objections.  See Local Rule 74.2.  In accordance with this rule, Respondent objects to the following findings of fact made in the 2/2/10 F&R:

> 1. "These subpoenas were issued as part of an investigation conducted pursuant to Section 601 of the Labor-Management Reporting and Disclosure Act of 1959[.]" (Exh. 3-2).  [Respondent] submits that the investigation was pursuant to Section 401(b) of the Act.
>
> . . . .
>
> 3. "At all times relevant to this Petition, OLMS . . . has been conducting an investigation of the July 11, 2009, rerun, supervised election . . . pursuant to a settlement agreement and Section 601 of the LMRDA[.]"  [Respondent] submits that the investigation was pursuant to the settlement agreement and Section 401 (b) of the Act.
>
> . . . .
>
> 10. ". . . . The substance of the [Union's] objection was that OLMS had to make a showing of materiality and relevance of the records prior to Local 368 producing the records."  [Respondent] had due process rights to know the substance and nature of the election challenges OLMS received prior to the deadline for filing election challenges.

Respondent's Obj. Mem. at 8-10.  In addition, Respondent objects to the following conclusions of law made in the

2/2/10 F&R:

      1. "The court has subject matter jurisdiction over this Petition pursuant to Section s 9 and 10 of the Federal Trade Commission Act, 15 U.S.C. §§ 49 and 50, as made applicable to the LMRDA by Section 601 (b) of the LMRDA[.]"  [Respondent] submits that the investigation was pursuant to Section 401 (b) of the Act.

      . . . .

      4. "The July 11, 2009, election arising out of the settlement agreement among Local 368, the Laborer's International Union for North America, and OLMS dated August 20, 2008, is analogous to a Court Ordered rerun election under Section 402 (c)(2) of the Act, 29 U.S.C. § 482.  Therefore, the 60 day time limit to bring a complaint for violations under the LMRDA pursuant to Section 402(b) is not applicable in this matter." [Respondent] submits the election was analogous to an election conducted pursuant to Section 401 of the Act and the 60-day time limit in Section 402 (b) applies.

      5. "The Secretary is not required to demonstrate the relevance and materiality of the production of books, papers, and document, or the attendance of witnesses subpoenaed as part of a legitimate investigation under the enforcement powers granted to the Secretary under Section 601 of the Act[.]" [Respondent] submits that where the investigation relates to an election held pursuant to an agreement, [Respondent] has due process rights to know the substance and nature of the election challenges OLMS received prior to the deadline for filing election challenges and any subpoena power of the Secretary is moot if the deadline for the Secretary to challenge an election under Section 402(b) has passed.

Id. at 9-10.  Further, Respondent generally objects to the reference to a "legitimate investigation" throughout the 2/2/10 F&R to the extent that Respondent asserts any legitimate

investigation was pursuant to Section 402(b) of the Act, and not Section 601 of the Act.  <u>Id.</u> at 10.[8]

Additionally, Respondent objects to the 2/2/10 F&R "in that it ordered Respondent to produce all documents demanded in the July 14, 2009 subpoena and ordered the Respondent to produce the telephone records demanded in the June 22, 2009 subpoena if OLMS determined the numbers were necessary and required."  <u>Id.</u>

In summary, Respondent appears to object to three aspects of the 2/2/10 F&R.  First, Respondent asserts that the 60-day time limit to file a complaint located in Section 402(b), 29 U.S.C. § 482(b), of the LMRDA is applicable, and that any request for documents at this point is unnecessary and oppressive because the deadline for filing a civil suit to set aside the election has passed.  Second, Respondent asserts that it had a due process right to know the substance of the Local 368 members' complaints before producing the records requested by the Secretary.  Third, and finally, Respondent asserts that the privacy rights of its members will be violated by production of the members' telephone numbers.

### STANDARD OF REVIEW

A district court reviews de novo those portions of a

---

[8]Respondent notes that to the extent that the 2/2/10 F&R finds that Respondent failed to produce the subpoenaed records, at all times it offered to make the records available for viewing but not copying.

magistrate judge's findings and recommendation to which an objection is made and may accept, reject, or modify, in whole or in part, the findings and recommendation made by the magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Rule 74.2 of the Local Rules of Practice of the United States District Court for the District of Hawaii ("Local Rules").  The district court may receive further evidence or recommit the matter to the magistrate judge with instructions.  28 U.S.C. § 636(b)(1).  It may also consider the record developed before the magistrate judge.  Local Rule 74.2.  The district court must arrive at its own independent conclusions about those portions of the magistrate judge's report to which objections are made, but a de novo hearing is not required.  United States v. Remsing, 874 F.2d 614, 618 (9th Cir. 1989).

## DISCUSSION

The instant dispute revolves largely around Section 402 of the LMRDA, 29 U.S.C. § 482.  This provision provides, in relevant part:

> (a) Filing of complaint; presumption of validity
> of challenged election
>
> A member of a labor organization--
>
> (1) who has exhausted the remedies available
> under the constitution and bylaws of such
> organization and of any parent body . . .
>
> may file a complaint with the Secretary within one
> calendar month thereafter alleging the violation
> of any provision of section 481 of this title

(including violation of the constitution and
bylaws of the labor organization pertaining to the
election and removal of officers) . . .

(b) Investigation of complaint; commencement of
civil action by Secretary; jurisdiction;
preservation of assets

The Secretary shall investigate such complaint
and, if he finds probable cause to believe that a
violation of this subchapter has occurred and has
not been remedied, he shall, within sixty days
after the filing of such complaint, bring a civil
action against the labor organization as an entity
in the district court of the United States in
which such labor organization maintains its
principal office to set aside the invalid
election, if any, and to direct the conduct of an
election or hearing and vote upon the removal of
officers under the supervision of the Secretary
and in accordance with the provisions of this
subchapter and such rules and regulations as the
Secretary may prescribe . . .

(c) Declaration of void election; order for new
election; certification of election to court;
decree; certification of result of vote for
removal of officers

If, upon a preponderance of the evidence after a
trial upon the merits, the court finds—

. . .

     (2) that the violation of section 481 of this
title may have affected the outcome of an
election,

the court shall declare the election, if any, to
be void and direct the conduct of a new election
under supervision of the Secretary and, so far as
lawful and practicable, in conformity with the
constitution and bylaws of the labor organization.
The Secretary shall promptly certify to the court
the names of the persons elected, and the court
shall thereupon enter a decree declaring such
persons to be the officers of the labor
organization . . . .

Section 402, 29 U.S.C. § 482.

Respondent's main argument appears to be that the Secretary's current investigation is being made pursuant to Sections 401 and 402 of the LMRDA, 29 U.S.C. §§ 481 & 482, and not its general investigatory powers pursuant to Section 601, 29 U.S.C. § 521.  To this end, Respondent argues that the Secretary is time-barred from filing a complaint to challenge the results of the rerun election pursuant to Section 402(b), and also that Respondent is entitled to know the nature of the member complaints prior to producing the subpoenaed documents. Respondent also objects generally to the scope of the subpoenas, asserting that the subpoenas infringe upon the privacy interests of the Local 368 members.  The Court will examine these issues in turn.

## I. Investigation of Union Elections

The purpose of Title IV of the LMRDA is "to provide free and democratic elections while giving effect to the countervailing policy that unions should be free to conduct their affairs so far as possible and the government should not become excessively involved in union politics."  Chao v. Bremerton Metal Trades Council, 294 F.3d 1114, 1119-20 (9th Cir. 2002) (citing Casumpang v. Int'l Longshoremen's & Warehouseman's Union, Local 142, 269 F.3d 1042 (9th Cir. 2001)); see also Hodgson v. Local Union 6799, United Steelworkers of Am., 403 U.S. 333, 338 (1971)

(noting that in enacting Title IV of the LMRDA, the "congressional concern was for the need to remedy abuses in union elections without departing needlessly from the longstanding congressional policy against unnecessary governmental interference with union affairs").

Generally, the Secretary of Labor is empowered to issue subpoenas whenever the Secretary believes the LMRDA is being violated.  See 29 U.S.C. § 521.  The investigatory powers of administrative agencies are analogous to the grand jury, and an agency can investigate on the mere suspicion the law is being violated.  United States v. Morton Salt Co., 338 U.S. 632, 642-43 (1950); EEOC v. Children's Hosp. Med. Ctr. of N. Cal., 719 F.2d 1426, 1429 (9th Cir. 1983), abrogated on other grounds by Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991); Casey v. Federal Trade Comm'n, 578 F.2d 793, 799 (9th Cir. 1978); Federal Maritime Comm'n v. Port of Seattle, 521 F.2d 431, 435 (9th Cir.1975).  The Ninth Circuit standard of judicial scrutiny in an agency subpoena enforcement proceeding focuses on: (1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the information sought is relevant and material to the investigation. EPA v. Alyeska Pipeline Service Co., 836 F.2d 443, 446 (9th Cir. 1988); EEOC v. Children's Hosp. Med. Ctr. of N. Cal., 719 F.2d at 1428 (citing Endicott Johnson Corp. v. Perkins, 317 U.S. 501,

508-09 (1943)).  If the agency demonstrates the existence of these factors, the court should enforce the subpoena unless the party subpoenaed proves the inquiry is unreasonably overbroad or unduly burdensome.  EEOC v. Children's Hosp. Med. Ctr. of N. Cal., 719 F.2d at 1428 (citing Oklahoma Press Publ'n Co. v. Walling, 327 U.S. 186, 217 (1946)).

Title IV of the LMRDA, however, limits the Secretary's involvement in union elections in some instances.[9]  For example, the enforcement provisions of Section 402(a), 29 U.S.C. § 482, provide that prior to filing an election grievance with the Secretary, a union member must first exhaust internal union remedies.  29 U.S.C. § 482(a); see also Calhoon v. Harvey, 379 U.S. 134, 140 (1964) ("Even when an election violates these standards, the stated commitment is to postpone governmental intervention until the union is afforded the opportunity to redress the violation.  This is the effect of the requirement that a complaining union member must first exhaust his internal union remedies before invoking the aid of the Secretary."); see also Wirtz v. Local 153, Glass Bottle Blowers Assn., 389 U.S. 463, 470-71 (1968) ("In the end there emerged a 'general congressional policy to allow unions great latitude in resolving

_____

[9] As noted below, Section 402(a)-(b), 29 U.S.C. 482(a)-(b), does not limit the Secretary's general investigatory powers, but instead establishes parameters that must be followed in order for the Secretary to initiate a lawsuit against a union to set aside an election.

their own internal controversies, and, where that fails, to utilize the agencies of Government most familiar with union problems to aid in bringing about a settlement through discussion before resort to the courts.'" (internal citations omitted)).  If relief is not forthcoming, then the union member may file a complaint with the Secretary.  29 U.S.C. § 482(a).  The Secretary investigates the allegations and determines whether there is probable cause to believe that a Title IV violation has occurred and has not yet been remedied.  Id. § 482(b).

The Secretary then has the discretion to determine whether this violation may have affected the outcome of the election, and if so, to bring suit in federal court to set aside the election.  Id.  The Secretary may attempt to settle the matter without any lawsuit; the objective is not a lawsuit but to "'aid in bringing about a settlement through discussion before resort to the courts.'"  Wirtz, 389 U.S. at 470-71 (quoting Calhoon, 379 U.S. at 140).  If settlement is unsuccessful, the Secretary must file suit within 60 days of receiving the member complaint and then the district court determines whether, based upon the preponderance of the evidence, the election is void.  29 U.S.C. § 482(b)-(c).  If the court so finds, then the court is "to direct the conduct of a new election under the supervision of the Secretary and, so far as lawful and practical, in conformity with the union's constitution and bylaws."  29 U.S.C. § 482(c).

Thereafter, upon completion of the new election, the Secretary is directed to "promptly certify to the court the names of the persons elected, and the court shall thereupon enter a decree declaring such persons to be the officers of the labor organization."  Id. § 482(c)(2).

The issue raised by the case at bar is which statutory provisions apply where the Secretary and union enter into a voluntary settlement agreement prior to the initiation of a lawsuit.  Respondent argues that general LMRDA provisions (Section 402(a)-(b)) should apply unless the election agreement provides otherwise.  Respondent's Obj. Mem. at 15.  To this end, Respondent asserts that the 60-day statute of limitations specified in Section 402(b), 29 U.S.C. § 482(b), is applicable in this case.  Id.  Pursuant to this statute of limitations, Respondent asserts that the Secretary has missed the deadline to bring a civil action to challenge the July 2009 rerun election, because no such complaint has been filed.  Thus, according to Respondent, at this point enforcement of the subpoenas would be "oppressive" because the Secretary "has no further use of the documents (having no legal basis to challenge the election)." Respondent's Obj. Mem. at 17.[10]

---

[10] Pursuant to Section 601, 29 U.S.C. § 521, the Secretary is permitted to investigate any matter under the LMRDA, except for Title I violations, which are not at issue here.  See 29 U.S.C. § 521.  In other words, the LMRDA only limits the

(continued...)

In similar fashion, Respondent argues that "before requiring the Union to release numerous business and membership meeting records the Court must require the Secretary to provide the nature of and identity of the specific allegations of the election challenge."[11/]  Respondent's Obj. Mem. at 22.

---

[10/](...continued)
Secretary's broad power to investigate, including issuing subpoenas, by specifically excluding investigations of actions arising under Title I of the LMRDA (entitled "Bill of Rights of Members of Labor Organizations").  Section 402(a)-(b) does not limit the Secretary's general investigatory powers, but instead establishes parameters that must be followed in order for the Secretary to initiate a lawsuit against a union to set aside an election.  See 29 U.S.C. § 482(a)-(b); see also 29 C.F.R. § 452.4 ("The provisions of section 601 of the Act provide general investigatory authority to investigate alleged violations of the Act including violations of Title IV.  However, section 601 in and of itself provides no remedy, and the section must be read in conjunction with the remedy and statutory scheme of section 402 . . . .").  The Court, therefore, agrees with Petitioner that whether or not the Secretary can or will file a complaint pursuant to LMRDA § 402(b), 29 U.S.C. § 482(b), is not the main issue before the Court.  Id.  However, the Court agrees with Judge Kurren that if the Secretary is barred from bringing a complaint to set aside the election, the legitimacy of the investigation might be placed into question.  See 1/20/10 Tr. 3:22-25 ("Tr.") (Judge Kurren noted that "If [the Secretary] can't file a complaint . . . what would be the point of going forward with this investigation or allowing it?"); see also Goldberg v. Truck Drivers Local Union No. 299, 293 F.2d 807, 812 (6th Cir. 1961).  Accordingly, the Court believes it is necessary to address Respondent's contention that the 60-day statute of limitations applies in the instant case.

[11/] Respondent does not cite much authority in support of this position.  Presumably, this position is partially based on Section 402(a), 29 U.S.C. 482(a), wherein union members are required to exhaust their internal remedies prior to bringing a complaint to the Secretary.  If Local 368 members were required to exhaust their internal remedies in this case, presumably Respondent would aware of the nature of and identity of the
(continued...)

In contrast, Petitioner focuses on the Election Rules which were agreed upon as part of the Settlement Agreement, which state

> it should be clearly understood that all phases of the nominations and elections of Local 368 officers are subject to U.S. Department of Labor supervision.  No aspect should be conducted without prior consultation with and approval by the OLMS election supervisor or his designated representatives.

Election Rules at 9.  Further, the Settlement Agreement and Election Rules provide that all member complaints were to be made to the OLMS election supervisor.  Id.; Respondent's Obj. Mem. at 3, Ex. 1:9.  Petitioner asserts that the voluntary settlement agreement between Petitioner and Respondent is analogous to a court ordered rerun election pursuant to Section 402(c), and therefore the exhaustion requirement and 60-day filing limitation located at Section 402(a)-(b), 29 U.S.C. § 482(a)-(b), do not apply.

Judge Kurren agreed with Respondent and concluded as a matter of law that

> [the] election arising out of the settlement agreement among Local 368, the Laborer's International Union of North America, and OLMS dated August 20, 2008, is analogous to a Court Ordered rerun election under Section 402(c)(2) of the Act, 29 U.S.C. § 482.  Therefore, the 60 day

---

[11]/(...continued)
specific allegations of the election challenge.  As discussed below, however, there is no such requirement with respect to the July 2009 rerun election.

> time limit to bring a complaint for violations
> under the LMRDA pursuant to Section 402(b) is not
> applicable in this matter.

2/2/10 F&R at 6.  At the hearing before the magistrate, Judge

Kurren explained that "because of the settlement agreement and

the supervision that's involved . . . the 60 day time limit is

not applicable."  Tr. 7:12-16.  Judge Kurren further observed

that "this is a legitimate investigation . . . [and that as long

as the Secretary acts] promptly on this they . . . can proceed."

Id. 7:17-25.

In this case, the rerun election pursuant to the

Settlement Agreement and Election Rules are very similar to a

court ordered rerun election.  For instance, the entire election

was to be supervised by the Secretary, which is mandated by

Section 402(c), 29 U.S.C. § 482(c), in the case of court ordered

rerun elections.  In contrast, Section 402(a)-(b) typically

applies to general elections in which the Secretary has no

supervisory authority.  It is in those cases where the "general

congressional policy to allow unions great latitude in resolving

their own internal controversies" is applicable.  Wirtz, 389 U.S.

at 470-71.[12/]  That general policy, however, is not applicable

---

[12/] Even in general elections conducted pursuant to Section
402(a)-(b), the Secretary has the authority to investigate union
elections after the conclusion of balloting where necessary to
collect or preserve evidence.  See 29 C.F.R. § 452.4 ("Thus, the
[Secretary] ordinarily will employ its investigatory authority
only where the procedural requirements for a Title IV
(continued...)

where the Secretary is charged with supervising the election, either by court order or voluntary settlement agreement.

Further, Respondent argues that the provisions for members to protest the supervised election under the Settlement Agreement and Election Rules are "analogous to 29 U.S.C. § 482(a)."  Respondent's Obj. Mem. at 18.  The Settlement Agreement provides, however, that any member protests regarding the supervised election were to be filed with the OLMS election supervisor.  Respondent's Obj. Mem. at 3, Ex. 1:9.  Indeed, the Election Rules state that "[a]ny member may protest the supervised election of officers <u>directly</u> to the OLMS election supervisor . . . ."  Election Rules at 9 (emphasis added).  Conversely, Section 402(a) requires that before making a complaint to the Secretary, the member must have "exhausted the remedies available under the constitution and bylaws of such organization and of any parent body . . . ."  29 U.S.C. § 482(a).

Although there is no case law directly on point, the "the Supreme Court has stressed the Secretary's ameliorative function as an important feature of the statutory scheme, and the

---

[12]/(...continued)
investigation have been met; but in unusual circumstances or where necessary to collect or preserve evidence an investigation may be conducted after the conclusion of balloting.").  In this case, either the unusual circumstances or necessity exception would likely apply because balloting has concluded and the Secretary needs the documents to determine whether any violations of the LMRDA have occurred in connection with the July 2009 rerun election.

courts have read into the statute a 'waiver' procedure to afford time to negotiate settlements and have reviewed the resulting dispositions for conformance with the Act." <u>Usery v. Local Union No. 639 Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am. Ind.</u>, 543 F.2d 369, 387-88 (D.C. Cir. 1976).  In this case, instead of bringing a civil action against Local 368 pursuant to Section 402, 29 U.S.C. § 482(b)-(c), the Secretary entered into a settlement agreement which required Local 368 to conduct a new election for three union positions <u>to be supervised by the Secretary</u>.  <u>See</u> <u>Holmes v. Donovan</u>, 796 F.2d 173, 178-79 (6th Cir. 1986) (finding that a consent agreement for a voluntary runoff election was a reasonable exercise of the Secretary's authority under the LMRDA); <u>Herman v. Local 1695, United Auto., Aerospace and Agricultural Implement Workers of Am., AFL-CIO ("Local 1695")</u>, 111 F. Supp. 2d 602, 608 (E.D. Pa. 2000) (recognizing that a "voluntary settlement was akin to a court order directing the Secretary to supervise a union election" because "[t]he settlement's impact on the election process was identical to a Court order pursuant to § 482(c); it required a new election to be held under the supervision of the Secretary of Labor").

In the proceedings before Judge Kurren, Petitioner relied heavily on the Eastern District of Pennsylvania's decision in <u>Local 1695</u> to argue that the 60-day time limit did not apply.

See Petitioner's Opposition to Respondent's Motion to Quash at 5 (arguing that Local 1695 is "directly on point on this issue"). In its objections, Respondent argues that "[i]t is at best disingenuous of the Secretary to argue that the Pennsylvania court held that the '60 day deadline requirement of 29 U.S.C. § 482 for the secretary to bring a civil action is not applicable' . . . where the term '60 days' appears nowhere in the case let alone the legal analysis.'" Respondent's Obj. Mem. at 20.

The Court agrees with Respondent that Local 1695 is distinguishable because in that case, the Secretary filed a complaint regarding the rerun election within a month of the rerun election date, and therefore the court did not address the applicability of the 60-day deadline. 111 F. Supp. 2d at 606. Nonetheless, Local 1695 does support the broader proposition that voluntary settlement agreements may be akin to a court order directing the Secretary to supervise a union election where, as is here, the settlement requires a new election to be held under the supervision of the Secretary.[13/]  Moreover, all of the cases

---

[13/] At the hearing before Judge Kurren, Petitioner clarified its reliance on Local 1695:

> THE COURT: [T]he one case that you talk about though, that Pennsylvania case, I mean it doesn't really talk specifically about [the 60 day requirement] though.
>
> [COUNSEL FOR PETITIONER:] What the case represents, Your Honor, and what I tried to put
> (continued...)

the Court's independent research revealed implicitly endorse this approach.  See Brock v. Westside Local 174, Intern. Union Automobile, Aerospace and Agricultural Implement Workers of America, UAW ("Westside Local 174"), 643 F.Supp. 602, 603 (E.D. Mich. 1986) (noting that after the parties settled by agreeing to conduct a rerun election under the Secretary's supervision, the Secretary certified the winning presidential candidate pursuant to 29 U.S.C. § 482(c)(2)); United States v. Int'l Broth. of Teamsters, 957 F. Supp. 55, 59 (S.D.N.Y. 1997) (noting that Section 402(c) of the LMRDA addresses elections supervised by the United States Department of Labor).  Therefore, the Court concurs with Judge Kurren and finds that the Settlement Agreement and Elections Rules are analogous to a court ordered rerun election under Section 402(c)(2) of the Act, 29 U.S.C. § 482. Accordingly, the provisions in Section 402(a), and the 60-day statute of limitations in Section 402(b), are not applicable in this matter.

Respondent argues in the alternative that even if the 60-day limitation is not clearly identified by Congress to include complaints brought under Section 402(c), 29 U.S.C. § 482(c), the court is still required to apply the 60-day time

---

[13]/(...continued)
        forward is that the supervised election at issue
        here, is analogous to a court ordered election.

Tr. 4:6-11.

limitation located in Section 402(b), 29 U.S.C. § 482(b).
Respondent's Obj. Mem. at 20-21.  Respondent relies on
DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 158 (1983),
which noted that courts should apply a limitation period found in
other federal law where it provides a close analogy, and where
the federal policies at stake and the practicalities of
litigation make the rule significantly more appropriate.  To this
end, Respondent argues that the Court should "borrow" the 60-day
limitation in Section 402(b) for supervised rerun elections.
Respondent's Obj. Mem. at 21.

In DelCostello, the Supreme Court held that courts are
to borrow statute of limitations periods where "there is no
federal statute of limitations expressly applicable . . . ."  462
U.S. at 152.  That is not the case here, as Section 402(c)
requires that, following a supervised election, the Secretary
shall "promptly" certify to the court the names of the persons
elected.  29 U.S.C. § 402(c).  Unlike elections under Section
402(a) which are presumed to be valid unless the Secretary brings
a civil action against the union within 60 days of the filing of
the member complaint, supervised elections are not official until
the Secretary certifies the results of the rerun election.  See
29 U.S.C. § 482.  Thus, the requirement that the Secretary act
"promptly" is the appropriate standard in this case.

Further, it should be noted that the delay in the

32

certification of the July 2009 rerun election has resulted out of Respondent's failure to comply with the Secretary's requests. That is, even if the 60-day statute of limitations were to apply, it would be tolled in this instance because Respondent has impeded the Secretary's investigation.  See Brennan v. Indep. Lift Truck Builders Union, 490 F.2d 213, 216 (7th Cir. 1974) ("This 60-day statute of limitations is tolled by 'conduct on the part of the union which impedes or delays the Secretary's investigation.'" (quoting Hodgson v. Int'l Pressmen, 440 F.2d 1113, 1118-19 (6th Cir. 1971))).  The First Subpoena was issued on June 22, 2009, as a result of a member complaint filed sometime before June 12, 2009.  The Second Subpoena was issued on July 14, 2009, as a result of additional complaints received by the Secretary.  Although Respondent has permitted OLMS to inspect the documents requested in the Second Subpoena, at no time has Respondent fully complied with either of the subpoenas duces tecum.  Respondent's Obj. Mem. at 7.  Thus, even if the 60-day statute of limitations were to apply, which the Court finds it does not, the limitation period has been tolled and therefore the Secretary could still file a complaint to set aside the election.[14]

---

[14] In its objection, Respondent asserts that, working from the last day to file a protest, the sixty days ran on September 19, 2009, which is well before the Secretary filed the instant petition to enforce the subpoenas.  Respondent's Obj. Mem. at 15.
(continued...)

In conclusion, the 60-day period to file a complaint under section 402(b) of the LMRDA, 29 U.S.C. § 482(b), does not apply here.  The rerun election is conducted under section 402(c) of the LMRDA, 29 U.S.C. § 482(c), which requires that the Secretary "promptly" certify the election.  As a result, the Court must now consider whether the subpoenas duces tecum were properly issued pursuant to the Secretary's general investigatory authority.

## II. The Secretary's Subpoena Powers

As noted above, the Ninth Circuit standard of judicial scrutiny in an agency subpoena enforcement proceeding focuses on: (1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the information sought is relevant and material to the investigation.  Alyeska Pipeline Service Co., 836 F.2d at 446. If an agency demonstrates the existence of these factors, which may be done by affidavit, a prima facie showing that the requirements for enforcement of an agency subpoena is established.  Children's Hosp. Med. Ctr. of N. Cal., 719 F.2d at 1428; see also United States v. Palmer, 536 F.2d 1278, 1282 (9th Cir. 1967) ("A proper subpoena is sufficiently limited in scope,

---

[14]/(...continued)
As noted above, this assumes that the statute of limitations has not been tolled as a result of Respondent's failure to comply with the subpoenas duces tecum.

relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome."); FDIC v. Gardner, 126 F.3d 1138, 1142 (9th Cir. 1977) (an affidavit from a government official is sufficient to establish a prima facie showing that the requirements for enforcement of an agency subpoena have been met).

Once a prima facie showing has been made, it is left to the respondent to show compelling reasons why the subpoenas should not be enforced or should be enforced only in modified form. See McLaughlin v. Service Employees Union, ALF-CIO, Local 280, 880 F.2d 170, 174 (9th Cir. 1989) (noting that "[i]t is evident from reading the LMRDA that Congress intended that the Secretary exercise broad authority in investigating labor unions"). Because Respondent objects generally to the scope of the subpoenas, the Court will examine each requirement in turn, and then proceed to determine whether the subpoenas are unreasonably overbroad or unduly burdensome.

## A.    Whether Congress has granted the authority to investigate

In the 2/2/10 F&R, Judge Kurren held that the Secretary had authority to investigate the July 2009 rerun election under Section 601, 29 U.S.C. § 521, of the LMRDA. See 2/2/10 F&R at 2 ("These subpoenas were issued as part of an investigation conducted pursuant to Section 601 of the [LMRDA]."). Section 601

of the LMRDA, 29 U.S.C. § 521(a), which describes the investigatory power of the Secretary, provides:

> The Secretary shall have power when he believes it necessary in order to determine whether any person has violated or is about to violate any provision of this chapter . . . to make an investigation and in connection therewith he may enter such places and inspect such records and accounts and question such persons as he may deem necessary to enable him to determine the facts relative thereto.  The Secretary may report to interested persons or officials concerning the facts required to be shown in any report required by this chapter and concerning the reasons for failure or refusal to file such a report or any other matter which he deems to be appropriate as a result of such an investigation.

29 U.S.C. § 521(a).  Section 601(b), 29 U.S.C. § 521(b), further provides that in order to carry out the Secretary's investigative function, the Secretary shall have the full range of investigatory and enforcement powers possessed by the Federal Trade Commission, including the power to administratively subpoena witnesses, books, records, and other documents.  Id. § 521(b); see also McLaughlin, 880 F.2d at 174 ("The Secretary may issue a subpoena for the production of any documentary evidence relating to an investigation under Section 521(a).").

Respondent does not dispute that the Secretary has been granted broad authority to investigate union affairs.  Instead, Respondent disputes which statutory provision grants the Secretary authority to investigate this particular rerun election.  Respondent's Obj. Mem. at 8.  Specifically, Respondent

argues that the investigation was made pursuant to Section 401(b), 29 U.S.C. § 481(b). Presumably, this is an extension of Respondent's argument that the 60-day statute of limitations applies in this instance. Section 402(a), 29 U.S.C. § 482(a), provides that after a union member exhausts internal remedies, the member may file a complaint with the Secretary alleging a violation of any provision of Section 401, 29 U.S.C. § 481. Thereupon the Secretary shall investigate such complaint in accordance with Section 402(b), 29 U.S.C. § 482(b), to determine whether a violation has occurred.

As stated above, the Court finds that Section 402(a) and the 60-day statute of limitations in Section 402(b) are not applicable because the July 2009 rerun election is analogous to a court ordered rerun election pursuant to Section 402(c), 29 U.S.C. § 482(c). As the Secretary has general supervisory authority over the July 2009 rerun election, the Court agrees with Judge Kurren that this investigation is made pursuant to Section 601, 29 U.S.C. § 521. Accordingly, the Court rejects Respondent's objections relating to which statutory provision grants the Secretary statutory authority to issue the challenged administrative subpoenas duces tecum.

**B.    Whether procedural requirements have been followed**

Respondent does not dispute that the Secretary followed the appropriate procedural requirements in enforcing these

37

subpoenas duces tecum.  Upon review of the 2/2/10 F&R and the Declaration of Ms. Moenahele, the Court finds that this requirement is satisfied.  <u>See</u> 2/2/10 F&R at 2-5; Moenahele Decl. ¶¶ 10-11.

**C.  Whether the information sought is relevant and material to the investigation**

The standard of relevance in a subpoena enforcement action is akin to the standard of discovery in civil actions. <u>Marshall</u>, 523 F.Supp. at 233; <u>see also</u> <u>Goldberg</u>, 293 F.2d at 812 ("The purpose of the investigation authorized by Congress was to provide the means of discovery whereby the Secretary could determine whether the Act was being violated, or about to be violated.").  Respondent appears to make two arguments with respect to whether the information sought is relevant and material to the investigation.  First, Respondent argues that the request for the members' telephone numbers is moot because the original purpose of obtaining the telephone records was to distribute the information to all of the candidates such that no candidate would have an unfair advantage.  Second, Respondent asserts that, prior to turning over the records, the Secretary is required to demonstrate or explain to Respondent how the documents are relevant and material to the Secretary's investigation.  The Court will address each argument in turn.

i.  <u>Original Purpose of the Investigation</u>

Respondent asserts that "[t]he Secretary conceded her original purpose in obtaining the telephone numbers of the members was no longer a basis to enforce the subpoena," therefore "ordering the release of those numbers exceeds the Secretary's authority where her subpoena violates privacy rights of members." Respondent's Obj. Mem. at 26-27.

The Election Rules provided that "OLMS is responsible for assuring that the election is conducting in accordance with Title IV of the [LMRDA] . . . ." Election Rules at 1.  In response, Petitioner asserts that the original purpose of the investigation was twofold.  First, OLMS intended to make the membership information and telephone numbers available to all candidates as part of its supervisory function under the Settlement Agreement, such that the candidates would have equal access to this information.  Petitioner's Resp. at 10-11. Second, the subpoena was to assist in its general investigation to determine whether any person associated with Local 368 violated or is violating any provision of the LMRDA.  See Moenahele Decl. ¶ 6.  The administrative subpoenas duces tecum clearly indicated that they were issued as part of a broad investigation to determine whether any provision of the LMRDA had been violated.  See First Subpoena at 1 (noting that the subpoena was in the matter of "[a]n investigation by [OLMS] involving whether any person has violated or is about to violate any

provision of the [LMRDA] . . ."); Second Subpoena at 1 (same).
Thus, while the Secretary's use of the telephone numbers
subpoenaed has changed, the use of telephone numbers fall within
one of the original purposes of the investigation which is to
determine whether any person had violated or was violating the
LMRDA.

Judge Kurren agreed with Petitioner's broad
interpretation of the purpose of the investigation.  In the
2/2/10 F&R, Judge Kurren found that the "investigation is for the
purpose of determining whether any person associated with
Respondent Local 368 violated or is violating any provisions of
the LMRDA."  2/2/10 F&R at 2.  In light of the Secretary's
supervisory authority over the July 2009 rerun election, the
Court concurs with Judge Kurren that the investigation should be
broadly construed.  As such, the Court rejects Respondent's
argument that the telephone records no longer relate to the
original purpose of the Secretary's investigation.

ii.  Demonstration of Relevance

Respondent next argues that "before requiring the Union
to release numerous business and membership meeting and records
the Court must require the Secretary to provide the nature of and
identify specific allegations of the election challenge."
Respondent's Obj. Mem. at 22.  Respondent couches the argument
broadly in due process terms arguing that "[a]ny LMRDA election

complaint brought by the Secretary is governed by 29 U.S.C. § 482(b), and the Secretary's complaint is limited to the areas challenged raised in the complaint . . . ." Id. This argument, however, presumes that the investigation is being made pursuant to Section 402(b), 29 U.S.C. § 482(b). As noted above, the Secretary's current investigation is being made pursuant to Section 601, 29 U.S.C. § 521, and therefore there is no requirement that the complaining union members first exhaust internal remedies. In fact, the Election Rules provide that "[a]ny member may protest the supervised election of officers directly to the OLMS election supervisor . . . ." Election Rules at 9 (emphasis added).[15/] The remainder of Respondent's due process argument is without legal support under the LMRDA, case law, or the Election Rules.

It is evident from reading the LMRDA that Congress intended that the Secretary exercise broad authority in investigating labor unions, such that "[t]he Secretary is not required to demonstrate probable cause exists to launch a LMRDA investigation." McLaughlin, 880 F.2d at 174 (internal citations omitted). To this end, Petitioner asserts that the Secretary

---

[15/] Further, Respondent's argument that the union members were required to internally exhaust their remedies prior to filing a complaint with the Secretary would be more properly made in a defense to a complaint filed by the Secretary, instead of a proceeding such as this, where the Secretary is seeking documents from the union to investigate alleged violations of the LMRDA.

does not need to identify the nature of the member complaints in order to obtain the subpoenaed documents.  In the 2/2/10 F&R, Judge Kurren found that:

> The Secretary is not required to demonstrate the relevance and materiality of the production of books, papers, and documents, or the attendance of witnesses subpoenaed as part of a legitimate investigation under the enforcement powers granted to the Secretary under Section 601 of the Act, 29 U.S.C. § 521, to a person or entity being investigated pursuant to the LMRDA.

2/2/10 F&R at 6.

The Court agrees with Judge Kurren that it is not for the recipient of the subpoena, such as Local 368, to determine the relevance of the documents prior to producing them.  See Petitioner's Resp. at 15.  In this case, the requested records relate to the July 2009 supervised rerun election and are necessary to the Secretary's investigation of potential violations of the LMRDA.  Petitioner's Resp. at 18; Moenahele Decl. ¶¶ 6-10.  According to Petitioner, OLMS received election protests between June 12, 2009, and July 21, 2009, complaining that Local 368 resources were used to promote several of the candidates for the rerun supervised election.  Petitioner's Resp. at 11.  Because the purpose of the investigation is to determine whether any violations of the LMRDA occurred, the Court finds that the documents and things requested in the Second Subpoena are relevant and material to the Secretary's investigation.  See 29 U.S.C. § 521(a) ("The Secretary shall have power when he

42

believes it necessary in order to determine whether any person has violated or is about to violate any provision of [the LMRDA] . . . .").

The relevance and materiality of the subpoenaed documents are demonstrated by the fact that the Secretary cannot certify the results of the election until the subpoenas are complied with or are quashed.  That is, the Secretary cannot certify the results of the election if the Secretary believes that violations of the LMRDA occurred during the July 2009 rerun election, and the Secretary cannot confirm that no violation occurred until the Secretary is in possession of the subpoenaed documents.  Petitioner's Resp. at 23; see also Martin v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., Local 996, ALF-CIO, No. 89-00241 HMF, 1991 WL 346365, at *2 (D. Haw. Aug. 12, 1991) ("The Secretary has an obligation to refuse to certify a supervised election when it is apparent that the election was conducted in violation of the law.").

Accordingly, the Court rejects Respondent's objection that the Secretary must demonstrate the relevance of the subpoenaed documents prior to Respondent producing said documents, as well as Respondent's objection that the union members' due process rights would be violated by production of the documents.

**D.   Whether the subpoenas are unreasonably overbroad or unduly burdensome**

43

Even if the subpoenas comply with the Ninth Circuit standard of judicial scrutiny in an agency subpoena enforcement proceeding, Respondent argues that the subpoenas are overly broad.[16]

Respondent argues that the Second Subpoena is overly broad because the "subpoena seeks over 4,000 pages of documents related to nine employees or offices of the union." Respondent's Obj. Mem. at 25. Because the July 2009 rerun election only related to three offices, Respondent argues that the Secretary has failed to show how documents related to six employees or officers not the subject of the rerun election are relevant and material to its investigation.   Id.

Respondent's argument fails to take into account that the purpose of the Secretary's investigation is to determine whether any Local 368 member violated the LMRDA in connection with the July 2009 rerun election.  As Local 368's conduct of the supervised rerun election is at issue here, a review of several of the officers and employees of Local 368 that were involved in the rerun election are relevant and material to the Secretary's investigation.  Petitioner's Resp. at 18; see also 2/2/10 F&R at

---

[16] It should be noted that Respondent does not argue that the subpoenas are unduly burdensome.  Production of the materials relating to the election cannot be said to be overly burdensome because the Election Rules require that the records are to be kept for a period of one year after the election.  See Election Rules at 8 ("Local 368 . . . will preserve all election records for a period of one year.").

44

3-4.  In other words, according to Petitioner, the complaints regarding the July 2009 rerun election relate to the conduct of the union, and not just the conduct of the rerun election candidates.  See Moenahele Decl. ¶¶ 7-9.  Accordingly, the Court rejects Respondent's argument that the Second Subpoena is overbroad.

In addition, Respondent asserts that the First Subpoena is overly broad in that production of the members' telephone numbers would violate the privacy rights of its members. Respondent's Obj. Mem. at 27.  For reasons that are discussed more fully below, infra Section III, the Court finds that Respondent has failed to articulate objective facts that might give rise to a constitutional violation.  Moreover, the Court finds that the sequential approach recommended by Judge Kurren ensures that the scope of documents requested is not overly broad.  As such, the Court rejects Respondent's argument that the First Subpoena is overbroad.

In light of the foregoing, the Court adopts Judge Kurren's 2/2/10 F&R and affirms Judge Kurren's Order Denying Respondent's Motion to Quash.

**III. Respondent's Request for a Protective Order**

Respondent objects to Judge Kurren's Order Granting in Part Respondent's Motion for a Protective Order.  The Court will review this decision de novo in view of the uncertainty regarding

45

which standard of review is appropriate.[17]

Respondent asserts that production of the members' telephone numbers would violate the privacy rights of its members.  According to Respondent, "[t]he invasion on the privacy of the members . . . requires more than a showing of relevancy." Respondent's Obj. Mem. at 27.  Because <u>McLaughlin</u> is the only case Respondent cites in support of its argument, presumably Respondent is referring to its members' First Amendment

---

[17] Respondent "objects" to Judge Kurren's Order Granting in Part the Motion for a Protective Order and argues that the Court should review this finding de novo pursuant to Local Rule 74.2. Respondent's Obj. Mem. at 13.  "The applicable standard of review for an appeal of a magistrate's order turns on whether the order is dispositive or nondispositive." <u>Boskoff v. Yano</u>, 217 F.Supp. 2d 1077, 1084 (D. Haw. 2001); <u>see also</u> Local Rule 74.2.  An order granting a petition to enforce constitutes a case-dipositive order.  <u>See</u> <u>United States v. Webb</u>, No. 07-00170, 2007 WL 1669433, at *1 (D. Haw. June 5, 2007) ("Several courts have held that a ruling on a petition to enforce compliance with [a] . . . summons is dispositive, resulting in a de novo standard of review." (citations omitted)).  An order granting in part a protective order, however, does not constitute a case-dispositive order. <u>See</u> <u>Catlin v. Salt Lake City School Dist.</u>, No. 2:08-cv-362, 2009 WL 4233793, at *1 (D. Utah Nov. 23, 2009).  The standard of review for non-dispositive pre-trial orders issued by a magistrate is set forth in Local Rule 74.1, which directs the district judge to set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.  <u>See</u> Local Rule 74.1; <u>see</u> <u>also</u> 28 U.S.C. § 626(b)(1)(A); Fed. R. Civ. P. 72(a).  In this case, both Judge Kurren's findings and recommendation to enforce the petition and order granting in part Respondent's motion for a protective order address the sequential approach for compliance with the First and Second subpoenas, which was recommended because of privacy concerns.  As a result, it not entirely clear which standard of review should apply.  <u>See</u> 2/2/10 F&R at 7.  Nevertheless, because the Court would affirm Judge Kurren's Order Granting in Part Respondent's Motion for a Protective Order under either standard of review, the Court will apply the less deferential de novo standard.

associational rights.  See McLaughlin, 880 F.2d at 175 (noting that production of union meeting minutes implicates First Amendment rights); see also Brock v. Local 375, Plumbers Int'l Union of Am., AFL-CIO, 860 F.2d 346, 349 (9th Cir. 1988) (observing that an investigation by the Secretary into a voluntary fund, which acts "either independently or as an arm of the Union," can infringe upon First Amendment associational rights).  A union must make a prima facie showing of actual or past threatened infringement of First Amendment rights before a district court can even intervene in an investigation. McLaughlin, 880 F.2d at 175 (citing United States v. Trader's State Bank, 695 F.2d 1132, 1133 (9th Cir. 1983)).  A prima facie showing of a First Amendment infringement requires that the union demonstrate: "(1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights."  Brock, 860 F.2d at 350.  Bare allegations of possible First Amendment violations are insufficient to justify judicial intervention into a pending investigation. McLaughlin, 880 F.2d at 175.   The record must contain "objective and articulable facts, which go beyond broad allegations or subjective fears."  Id. (citing Brock, 860 F.2d at 350 n.1).

       Once the union has made a prima facie showing, the government bears the burden of demonstrating "a rational

47

connection between the disclosure required by the summons and a legitimate governmental end," and must demonstrate a cogent and compelling governmental interest in the disclosure.  <u>McLaughlin</u>, 880 F.2d at 175.  If the government can demonstrate that the information sought through the subpoenas is rationally related to a compelling governmental interest, the district court will then have to determine if the government's disclosure requirements are the "least restrictive means" of obtaining the desired information.  <u>Brock</u>, 860 F.2d at 350.

Upon review, the Court finds that Respondent has not articulated any specific harm that will result to its members if the Secretary is permitted to cross-reference their telephone numbers with Local 368 telephone records during the relevant time period.  Respondent only makes bare allegations of possible First Amendment violations, and fails to articulate objective facts that might give rise to a constitutional violation.  <u>See</u> Respondent's Obj. Mem. at 27.

Respondent argues that the constitutional concerns are further warranted now that the Secretary has indicated that the telephone numbers may be used to contact members if the Secretary finds it necessary.  <u>See</u> 2/2/10 F&R at 5 ("Petitioner does not intend to publish the telephone numbers or contact the Local 368 members whose telephone numbers may be provided.  However, Petitioner may later contact Local 368 members if necessary to

48

complete the Secretary's legitimate investigation."). Although this may raise additional constitutional concerns, Respondent again fails to specifically articulate how this might violate the associational rights of its members.

In contrast, Petitioner has established that this information promotes a legitimate governmental end as the Secretary seeks the numbers so that the Secretary can use the telephone numbers to identify calls made from Local 368 telephones to promote a particular slate of candidates during the rerun supervised election, which may constitute violations of Section 401(g), 29 U.S.C. § 481(g).[18] Petitioner's Resp. at 25. Further, it should be noted that the Secretary has promulgated regulations restricting the disclosure of subpoenaed documents to government officials "who have a 'need to know' the information involved in order to take appropriate action." <u>McLaughlin</u>, 880

_____

[18] Section 401(g), 29 U.S.C. 481(g) provides:

> (g) Use of dues, assessments or similar levies, and funds of employer for promotion of candidacy of person
>
> No moneys received by any labor organization by way of dues, assessment, or similar levy, and no moneys of an employer shall be contributed or applied to promote the candidacy of any person in any election subject to the provisions of this subchapter.  Such moneys of a labor organization may be utilized for notices, factual statements of issues not involving candidates, and other expenses necessary for the holding of an election.

29 U.S.C. 481(g).

49

F.2d at 175 (citing U.S. Department of Labor-Management Standards Enforcement Manual, p. 10-1 (Mar. 3, 1981)).  Accordingly, the Court finds that Respondent has failed to make a prima facie showing of a potential First Amendment violation.

Although enforcement of the subpoenas duces tecum would not infringe on the Local 368 members' constitutional rights, Judge Kurren granted in part Respondent's request for a protective order.  At the hearing, Judge Kurren explained:

> So I guess the only question that really does concern me is - - is whether and to what extent we should be requiring the production of all these phone numbers now.  And - - [Respondent's counsel] has a good point that maybe we should do this in a sequenced way.  If . . . these records reveal information that you want to match up with numbers . . . wouldn't it be maybe the best way to go here to get all that information first, and then if you need it I would say certainly you could get it then.

Tr. 8:4-12.  Following up on these concerns, in the 2/2/10 F&R Judge Kurren recommended as follows:

> If the Secretary determines after reviewing the documents produced under the July 14, 2009, subpoena that the telephone numbers are necessary to cross reference with other telephone records, the Secretary may demand without leave of Court, the telephone numbers requested in the June 22, 2009, subpoena.  This method represents the least intrusive method of gaining compliance with the Secretary's compelling government interest in securing compliance with the LMRDA.

2/2/10 F&R at 7.  Judge Kurren does not specifically articulate whether this approach is mandated by constitutional concerns, or whether this approach was chosen simply to minimize any potential

constitutional concerns that may arise at a later point in time. Because Judge Kurren recommended that the Secretary may request the documents in the First Subpoena "without leave of Court," the Court finds that Judge Kurren's sequential approach was not mandated by constitutional concerns, but instead by general concerns relating to member privacy and the desire to ensure that the scope of documents requested is not overly broad.[19]

Although not mandated by constitutional concerns, the Court agrees with Judge Kurren that the sequential approach is prudent.  Accordingly, the Court adopts this approach.  If after reviewing the documents obtained by the Second Subpoena the Secretary determines that the telephone records requested in the First Subpoena are necessary, the Secretary may demand that Respondent produce these documents without leave of court.

Finally, at the hearing before Judge Kurren, Respondent requested that the motion for a protective be denied without prejudice, such that Respondent may bring an additional motion for a protective order if it finds that the Secretary's request for documents in the First Subpoena violates its members'

---

[19] Even if Judge Kurren's recommendation was mandated by constitutional concerns, the Court would affirm Judge Kurren's 2/9/10 Order on Respondent's Motion for a Protective Order.  As stated above, the Court finds that the government has demonstrated that the information sought is rationally related to a compelling government interest.  Further, as Judge Kurren noted, the Court finds that the sequential approach represents the "least restrictive means" of obtaining the desired information.  See Tr. 9:1-23.

constitutional rights.  Tr. 10:11-22.  In light of this, Judge Kurren recommended that the motion for a protective order be granted in part, with leave to file an additional motion for a protective order if necessary.  However, Judge Kurren cautioned that "I can't prevent you from [filing another protective order], but I think you know where I'm coming from on this."  Tr. 10:18-22.  This Court similarly cautions Respondent that any subsequent motion for a protective order will likely be unsuccessful unless the circumstances significantly change such that Respondent can establish objective and articulable facts demonstrating how production of the telephone records will violate its members' constitutional rights.  Therefore, the Court affirms Judge Kurren's 2/9/10 Order on Respondent's Motion for a Protective Order.

## **CONCLUSION**

In light of the foregoing, it is ORDERED that:

1) Judge Kurren's 2/2/10 F&R is ADOPTED and the Petitioner's Petition to Enforce the two subpoenas duces tecum is GRANTED;

2) Respondent shall immediately produce to Petitioner all documents and things demanded in the July 14, 2009 (Second) subpoena issued by the District Director, OLMS;

3) Following Petitioner's review of the documents and things demanded in the July 14, 2009, (Second) subpoena and upon a determination by the Petitioner that the telephone numbers

demanded in the June 22, 2009 (First) subpoena issued by the District Director, OLMS, are necessary and required to cross reference with those telephone records demanded in the July 14, 2009 (Second) subpoena, Petitioner shall notify Respondent and Respondent shall produce the telephone numbers requested, without leave of court;

4) The 2/9/10 Order on Respondent's Motion to Quash is AFFIRMED; and

5) The 2/9/10 Order on Respondent's Motion for a Protective Order is AFFIRMED.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, April 29, 2010.



_Alan C. Kay_
Alan C. Kay
Sr. United States District Judge

Solis v. Laborer's International Union of North America, Local 368, Civ. No. 09-00512 ACK-BMK: Order (1) Adopting the Magistrate's Findings and Recommendation, (2) Affirming the Magistrate's Order Denying Respondent's Motion to Quash, and (3) Affirming the Magistrate's Order Granting in Part Respondent's Alternative Request for a Protective Order